representing the appellant Prudence Kantengwa. Ms. Kantengwa was born in Rwanda and she and her husband and children left Rwanda after the genocide in 1994. She lived in various countries in Africa. She applied for a non-immigrant visa a number three or four times. It was granted in 2001. She came to the United States three times and returned to her place of residence. The third time she received phone calls from people abroad suggesting that she would be in danger from the current Rwandan government should she return. She then applied for asylum and there were very lengthy, extensive, and contested asylum proceedings in the United States. She was cross-examined for 15 hours. The asylum judge granted asylum. During the time frame of those proceedings, the United States Attorney's Office obtained an indictment charging her with false statements and perjury. She went to trial on counts alleging perjury in the asylum proceedings in which she had testified. And she was convicted of some perjury counts and acquitted of others which addressed her testimony concerning her membership in the MRND, a political party in Rwanda, and her husband's membership in that here deal with whether there was a roadblock outside the front door of a hotel in which she stayed sometime between mid-April and the end of May 1994. She testified that there was no roadblock outside the front door and that there was no roadblock in front of the hotel while she was there in Butari. Whether these statements were material is an issue that is relevant to both the sufficiency of the evidence claims and the sufficiency of the instructions to the jury, as well as to whether collateral estoppel should have been employed to dismiss the perjury counts prior to trial. The, excuse me, materiality is a somewhat elusive standard. It has been defined as a natural tendency to influence or be capable of influencing the decision of the decision-making body to which it's addressed. And I think that that is the key here. The question is not, doesn't float in the air. You may have different standards of materiality depending on the nature of the proceeding. I mean this court has said that you look at materiality in the context of the proceeding and that, for example, a grand jury has a much broader investigatory function and you may have a different standard of materiality there than you would in a judicial proceeding, an adjudicative proceeding. The, in Silvera, the court was looking at a grand jury investigation and talked about the wide-ranging investigative function, but noted that materiality may be more readily found in statements to the grand jury than similar evidence offered on an issue in civil or criminal litigation, where the is whether there was no roadblock in front of the hotel was material to the asylum proceedings. And the issues in the asylum case were whether she had established a well-founded fear of persecution based on a relationship to her late husband or her brother, and whether the evidence established she had assisted in the persecution of others during the genocide in Rwanda so as to bar her from asylum. Now the district court here found that there was not even an allegation, never mind evidence, that she had participated in any genocidal activities and the immigration court never found any such thing either. What the immigration court did find was that the government had not established that she had lied about the roadblock because the question was was it there during a particular time and the government's evidence did not establish that it was there when she was there. The immigration judge found that she had been less than candid about some of her testimony about party membership of both herself and her husband, but found that that did not affect the courts, the immigration judge's ultimate decision on credibility that didn't go to the heart of the matter of her asylum claims and she granted her asylum. Suggests that in determining materiality for the perjury counts here, you have to inform the jury and review it in the context of what the asylum judge was doing and looking at. What are the standards that the asylum judge was applying and how are the false statements, alleged false statements, about the roadblock, even assuming they're false, material to the decision the asylum judge was making? And we're not talking, I know we're not talking about whether this particular judge did in fact find them to be true or false, but. Any case which finds an equivalence between materiality and the heart of the matter rule used in asylum cases? I haven't seen any cases addressing it particularly, but if you look at the at the definitions or the discussions of of what they are, the the heart of the matter, this court has a number of immigration decisions. We're quite aware. I'm sure you are. But describing the heart of the matter as meaning that the claims can't be merely peripheral, that the inconsistencies can't be merely peripheral, and that it's got to be central to the merits of the claim, not just peripheral. And I'm saying. What could have happened at the asylum hearing? Let's say she testified that there was a roadblock. I had understood that the government's argument, though they'll, you know, explain whether this is right or not. Had she said there was a roadblock, that would have invited a series of follow-up questions. Were you at it? All those types of things which might have gotten us closer to the heart of the matter. So in that sense you might think the lie was material. So what's your answer to that? Well, saying that you didn't see a roadblock. Again, there has been no evidence, no allegation that she was a participant in any activities. No, but I guess what I'm asking is that when she says there is no, I didn't see a roadblock. Okay. Had she answered truthfully, right? Well, we do not know that she did answer falsely. The immigration court found that the then just for these purposes, okay, that she answered falsely. I take it that would mean the true answer would have been there was a roadblock. Okay. Just play out for me. What could have happened at the asylum proceeding? The government suggests had she answered truthfully at the asylum proceeding, it would have been material to the asylum proceeding because it would have invited a series of follow-on questions and the like, which might have gotten us closer to the there might have been additional questions. Where does that go? That's what I'm asking. Well, there was a roadblock. If the answer is since there was no evidence that she was a participant in any activity, the answer is I didn't do anything. I wasn't there. I saw a roadblock. I was at the hotel. There was a roadblock. That doesn't take you anywhere. It doesn't affect the asylum proceedings. Would the government not have had any ability to bring in, had she answered differently, what room would there have been for the government to add to the record at that point? None? The same room that they had to add to it originally because they said that she was testifying falsely. They brought in evidence that they claimed was sufficient to establish that there was a roadblock there. It simply wasn't. It was a question of timing. I understood the immigration judge. She found that it didn't go to the heart of the matter because the heart of the matter was whether if she was returned to Rwanda, she would suffer injury on account of her political beliefs or one of the five enumerated grounds. That's question number one. Question number two, which the roadblock would go to, was whether even if she established that, whether the persecutor bar would preclude the court from granting asylum. Right. And it also, then, that information might go to the district judge's discretionary, I'm sorry, the immigration judge's, the discretionary aspect of an asylum decision. So, you're saying it was irrelevant, but that seems quite unlikely. No, I'm saying that it wasn't material, not that it was, there's a difference between irrelevancy and materiality, and I'm saying that it was not material. And in terms, Judge Barron, of whether this was true or false, that is relevant to the other issue, which is the admission of Mr. Longman's testimony, as that was expert, supposedly expert testimony, repeating the hearsay from some friends that there was a roadblock in front of the hotel there. So, there is, there was a question as to the sufficiency of that testimony, and I think that, that that's something that can be factored in. The, counsel, your time is up. Oh, I'm sorry. Do you want to make a quick few sentences about the remainder of your argument? I'd appreciate that. I'd like to just briefly address the issue preclusion, because that is also related to, to the materiality of, of these statements. The district court said, even assuming that, it would assume that issue preclusion would apply, and we agree with that, but found that there was inadequate privity of parties and, and, and substantiality of issues. And I think that the, the issues that we've been talking about are the same issues, that it's the question of, was there a roadblock? Did she, what were the party affiliations? Those are the issues that went to the heart of the asylum proceedings, and they went to the heart of the perjury proceedings. So, I think we do have the substantiality of issues, and as for parties, they, it was the United States government, and we, this court has issued another decision that the U.S. Attorney's Office and a postal, an attorney representing the Postal Service are in privity. So, I appreciate your indulgence, and thank you. Thank you. Mr. Quinlivan. Chief Judge Lindstrom, may it please the court. Mark Quinlivan, again on behalf of the United States. Let me start with the issue preclusion claim, because I think this court can reject that, either on broad or narrow grounds. You know this court, we prefer narrow grounds. And I'll, I'll go to the narrow grounds then, because the, the issues in this case were different. The actual matter was not decided by the immigration judge, and the responsibilities and functions of the government counsel were entirely different. Let's say, granting all of that, well, finish your argument. Let me, so, start with the issues are different. The issue before the immigration judge, whether the defendant had demonstrated a well-founded fear of persecution, embedded within that question is whether she was credible in her testimony, and the district court, or the immigration judge was applying the heart of the matter rule. And in this case, because the defendant's claim was based on her association with her brother, who was a member of an opposition political party, she would be subjected to persecution if she returned to Rwanda. Well, that's, yes, Judge Thompson, that's correct, but I would, I would point out that, that this case, I think, is distinguishable from the last case you heard, because I think my friend is correctly said, there wasn't evidence presented in this trial that the, that this defendant actively participated in the roadblock at the Hotel Ir Herrero. So, the persecutor bar, nor was there any such testimony presented at the immigration. So, that really wasn't a significant issue before the immigration judge. But, at bottom, I would, the immigration judge, but was the government attempting to prove that? No, no, Judge, no, Judge Thompson. In fact, there, the, there was, the government put on, with respect to the roadblock, that the government put on the evidence that was a book, which the immigration judge said showed that the roadblock existed sometime in June 1994, after the defendant had left the Hotel Ir Herrero, and a human rights watch report that didn't discuss the timing. So, the immigration judge said that the government had not conclusively established that the roadblock was there when the defendant was at the hotel. But, the judge then said, but even assuming it was, I think that the block her mind from what was occurring. And, she used an example from the book, where somebody who was a vice rector at a university, who knew that the horrific acts were going on, turned a blind eye to, to them. And, the immigration judge that said that, that's how I view the defendant's testimony in this case. So, I would suggest that that's hardly the kind of conclusive resolution of an issue that would trigger collateral. But, my problem is that that is such a potentially good argument, that I'm now having trouble seeing why the lie was material. Well, it was material in several respects. And, I'd note, again, although it's materials of the asylum proceeding. Yeah, absolutely. And, and I note that the, again, it's an objective test. So, it's not what the immigration judge herself said. The immigration judge herself said that the lies were material. But, that they didn't go to the heart of the matter. So, they were, they were. In what sense are they material? That's what I'm having trouble understanding. They weren't arguing that there was a persecutor bar. Under the heart of the matter test, a mere misstatement or lie doesn't disable you from being able to get asylum. So, in what sense would they, would this lie have been material to the asylum proceeding? Well, Judge Barron, I think the answer is that, again, and I think you alluded to it in your own questions, that there would have been a succession of follow-ups. But, what could they have led to if you're not trying to argue that the persecutor bar applied? I don't quite, I just don't get it. Well, first, first, to begin with, it, it, first, a different immigration judge may have reached a different conclusion as to whether or not the lies went to the heart of the matter. So, the, the, the defendant doesn't What would be the argument that it would if you're not, if the government was not arguing a persecutor bar? Well, if. The roadblock wouldn't affect whether she would have a well-founded fear, couldn't it? Well, the, the, well, let, let me, if I may just amend slightly. There, again, there was no evidence presented that the defendant personally participated in the roadblock at the Hotel Hierrero. However. Did the government make any argument that the persecutor bar applied at all? Well, if, if the defendant had said, testified truthfully that, yes, indeed, that roadblock was there, it would have triggered a follow-up questions about who was involved in the roadblock. Did you provide them assistance in any possible way? Did you, did you know what was going on? Did you do anything to try to stop the, what was going on? Now, it may not have been acts that she was directly involved in the roadblock, but it may have been relevant to whether she had aided or abetted those who were also staying at the hotel and participating. Just so I understand, is your materiality theory dependent on this lie being relevant to the persecutor bar? No. Okay, if it's not relevant to the persecutor bar, in what way was it material to the asylum proceeding? Because, because it, again, the lies, if she had given truthful answers, they would have triggered follow-up questions, which may have been relevant. To what? Well, To showing a persecutor bar? No. To what, then? The discretionary denial is one, Judge Barron. So, at the end, the immigration judge, it's a several-step process. The petitioner has to show a well-founded fear of persecution. You then consider whether certain statutory bars apply, including the persecutor bar. And then, ultimately, there's a discretionary decision about whether or not to grant asylum. And one of the considerations is, are there aggravating factors that compel the denial? Now, if truthful answers had been given, the judge very well may have found that, for example, if it came out that the defendant had aided and abetted those who were participating in the roadblock, that she had a much more significant role and participation in the MRND government than she was letting on. Those may have changed the immigration judge's mind as to whether or not a discretionary grant of asylum was warranted. And, again, I point out that the immigration judge herself, I would suggest, recognized this distinction, as she herself said that the defendant's lies in this case were material but, nonetheless, didn't go to the heart of the matter because it didn't go to the question of whether or not she'd suffer persecution based on her association with her brother. If I could just clarify a couple points because I know a question was raised about Professor Longman's testimony. I just want to clarify a couple points with respect to that. We borrowed the language from the District Court of the District of Columbia that a historical expert can testify as to historical facts. I think the better formulation is that a historical expert can testify to historical events because a historical expert, as any expert, is ultimately offering his or her opinion. And the statement, historical facts, in that sense may be slightly confusing. But I want to point out that there's no possibility in this case that the jury was so confused because in its final charge the District Court expressly instructed the jury that both Professor Longman and Dr. Benton had testified as experts in the case, that they had given opinion testimony, and the jury was free to accept or reject that testimony just as it could with respect to any other witness. And it's not in the proof. The Longman testimony was error precisely because he was nominated an expert with respect to this particular discrete historical fact. Let's just say that raises a concern about, you know, any case you just have somebody go around and I'm an expert in, you know, what happened to Joe and I interviewed 20 people and Joe was there that day. Well, that seems problematic. Why would it be harmless there? It would be harmless because the jury did hear firsthand testimony from, the man's name was Augustin Mamiremi. He was a member of the government. In fact, he was the head of the Service Day Resondement. But because he was a member of an opposition party, had left the government, had traveled to Buitari, and did not see the roadblock when he first arrived, the roadblock in front of the Hotel Herrera when he first arrived there, but then saw it sometime again at the relevant dates shortly after the new president's speech in Buitari. So that would have been April 19th or April 20th. And he saw it on several other occasions in April of May 1994 before he left. Then you have Dr. Ben's testimony about the satellite imagery. Admittedly, that was satellite imagery in June and July of 1994, but the jury could infer from that that the roadblock that was in existence in June and July of 1994 also was in place in April and May of 1994. Thank you. I'd ask you please to consult with whoever is raising their hand. We are not going to hear from you. I will give you a moment to discuss with both counsel whatever you want to say. All right? Do you understand? Counsel, would you go over? All right. Please sit down. Counsel, is there anything further you wish to say to the court, either one of you? All right.